RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE ___3/__/__/__

## UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF LOUISIANA

#### MONROE DIVISION

| | |
|---|---|
| R.T. FAULK, III, ET AL. | CIVIL ACTION NO. 07-0554 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNION PACIFIC RAILROAD COMPANY | MAG. JUDGE MARK L. HORNSBY |

#### RULING

Pending before the Court are three filings by Defendant Union Pacific Railroad Company ("Union Pacific"): (1) an Opposition to the Court's notice of its intent to *sua sponte* grant summary judgment to Plaintiffs on certain of their requests for declaratory and injunctive relief ("Opposition to *Sua Sponte* Judgment") [Doc. Nos. 97 & 102]; (2) a Motion for Reconsideration [Doc. No. 99]; and (3) a Motion for Partial Summary Judgment [Doc. No. 103]. On October 8, 2010, Plaintiffs filed a Response to Union Pacific's Opposition to *Sua Sponte* Judgment and Motion for Partial Summary Judgment. [Doc. No. 106]. On October 22, 2010, Union Pacific filed a Reply to Plaintiffs' Response. [Doc. No. 111].

On October 14, 2010, Union Pacific also filed a Notice of Constitutional Challenge, alerting the Court that it was challenging the constitutionality of Louisiana Revised Statute 48:394 ("La. Rev. Stat. 48:394" or "the Act"), and requesting that the Court certify the constitutional challenge to the Louisiana Attorney General. [Doc. No. 109]. On December 2, 2010, the State of Louisiana filed a Motion for Leave to Intervene [Doc. No. 114], which the Court granted on December 7, 2010. [Doc. No. 115]. The "State of Louisiana's Memorandum in Opposition to Union Pacific's Motion for Partial Summary Judgment and in Support of the Constitutionality of LA. R.S. 48:394" was filed on December 8, 2010. [Doc. No. 118]. Because the constitutional challenge overlaps with issues

in the other pending documents, the Court will consider them together in this Ruling.

## I.    BACKGROUND

On August 22, 2010, the Court issued a Ruling and entered Judgment granting in part and denying in part Union Pacific's Motion for Summary Judgment. [Doc. Nos. 91 & 92]. The Court granted Union Pacific summary judgment against five Plaintiffs,[1] while denying the remainder of Union Pacific's motion.

In the same Ruling, the Court gave notice of its intent to *sua sponte* grant Plaintiffs summary judgment on certain of their requests for declaratory and injunctive relief: (1) declaring that Union Pacific has only rights of way through Plaintiffs' land; (2) declaring that any crossings closed on or after June 30, 2008, were improperly closed because Union Pacific failed to comply with La. Rev. Stat. 48:394; (3) permanently enjoining Union Pacific from closing any existing crossings without complying with La. Rev. Stat. 48:394; and (4) providing conditional injunctive relief for private crossings closed on or after June 30, 2008.[2]

The Court also gave notice of its intent to *sua sponte* dismiss Union Pacific's requests (1) for declaratory relief regarding existing crossings or crossings closed on or after June 30, 2008; (2) for an injunction barring Plaintiffs from interfering with the closure of private crossings; and (3) for an injunction barring Plaintiffs from creating more private crossings.

In the Ruling, the Court found that claims regarding private crossings which had been closed before June 30, 2008, were not governed by La. Rev. Stat. 48:394 and that there were genuine issues of material fact for trial as to the rights of the parties. The Court also found that claims regarding

---

[1] The Court granted Union Pacific summary judgment against Plaintiffs who were only lessees of the land.

[2] The Court gave Union Pacific the option of re-opening crossings closed on or after June 30, 2008, or complying with the terms of La. Rev. Stat. 48:394.

private crossings which had not been closed before June 30, 2008, were governed by La. Rev. Stat. 48:394 and, thus, were not properly before the Court.

In its Opposition to *Sua Sponte* Judgment, Union Pacific challenges the applicability and constitutionality of La. Rev. Stat. 48:394. Union Pacific makes the following arguments regarding the Act: (1) as this lawsuit was filed before the Act was enacted, it should not apply to the claims in this case; (2) the Act is preempted by federal law; (3) the Act cannot be applied retroactively because it would unconstitutionally divest vested rights; (4) the Act is unconstitutionally vague, in violation of procedural due process standards; (5) the Act authorizes an unconstitutional taking; (6) the Act violates Union Pacific's right to equal protection; (7) the Act violates separation-of-powers principles enshrined in the Louisiana Constitution; and (8) the Act violates the Louisiana Constitution because it divests state district courts of exclusive jurisdiction over cases involving title to immovable property. After concluding that the Act does not apply to the claims in this case, Union Pacific argues that applicable federal and state laws merit judgment in its favor.

In its Motion for Reconsideration and Motion for Partial Summary Judgment, Union Pacific incorporates by reference one of its memoranda in Opposition to *Sua Sponte* Judgment. *See* [Doc. No. 102]. Union Pacific contends that the Court should grant its Motion for Reconsideration because the Court committed manifest errors of law. Based on the following analysis, Union Pacific's Motion for Partial Summary Judgment regarding any claims or defenses based upon La. Rev. Stat. 48:394 [Doc. No. 103] is DENIED. Union Pacific's Motion for Reconsideration [Doc. No. 99], construed as a motion seeking relief from judgment, is also DENIED.

Regarding its intent to *sua sponte* grant judgment, the Court will enter judgment as follows. First, Union Pacific is permanently enjoined from closing any existing crossings without complying with La. Rev. Stat. 48:394. Second, Union Pacific's request for declaratory relief regarding existing

3

crossings and request for an injunction barring Plaintiffs from interfering with the closure of private crossings are DISMISSED WITH PREJUDICE. Third, Union Pacific's request for an injunction barring Plaintiffs from creating more private crossings is DISMISSED WITHOUT PREJUDICE.

## II.    STANDARDS OF REVIEW

Union Pacific's motions require two standards of review by the Court. Its "Motion for Reconsideration" is reviewed under the standard applicable to Rule 60(b) motions for relief from judgment. Although Union Pacific styles its challenge to this Court's previous Ruling a "Motion for Reconsideration," purportedly pursuant to Federal Rule of Civil Procedure 59 [Doc. No. 99], the Federal Rules of Civil Procedure do not recognize a motion for reconsideration *per se*. A motion for reconsideration filed more than twenty-eight days after the Court's Judgment is construed as a "motion seeking relief from judgment under Rule 60(b)." *See Ysais v. Richardson*, 603 F.3d 1175, 1178 & nn.2-3 (10th Cir. 2010). Union Pacific's Motion for Reconsideration was filed on September 21, 2010, thirty days after the Court's Judgment.

Union Pacific's Opposition to *Sua Sponte* Judgment and Motion for Partial Summary Judgment are reviewed under the summary judgment standard.

### A.    Motion for Relief from a Final Judgment Standard

Although Rule 60(b) provides several grounds for relief, the only ground available in this case is found in subsection (6). That provision allows a court to give a party relief from a final judgment for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6). Although Rule 60(b)(6) gives equitable power to the courts, the Fifth Circuit has limited its availability, finding that relief "will be granted only under extraordinary circumstances." *King v. Allstate Ins. Co.*, 293 Fed. App'x 270, 271 (5th Cir. 2008) (internal quotation marks omitted); *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995).

4

**B.  Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

**III.  ANALYSIS**

On June 30, 2008, the Louisiana Legislature passed Act No. 530, enacting La. Rev. Stat. 48:394, which provided as follows:

Private crossing elimination

A. (1) Any railroad company operating in this state which desires to close or remove a private crossing shall, no less than one hundred eighty days prior to the proposed closing or removal, provide a written request by registered or certified mail to the

5

Louisiana Public Service Commission and to the owner or owners of record of the private crossing traversed by the rail line. The written request shall state the reason the railroad company proposes to close such crossing.

(2) The Louisiana Public Service Commission shall publish the written request from the railroad company in the commission's official bulletin for no less than twenty-five days.

B. No private crossing shall be closed or removed by any railroad company until after a public hearing by the Louisiana Public Service Commission at which parties in interest have had an opportunity to be heard. Notice of the time and place of the hearing shall be published in the official journal of the parish and the commission's official bulletin and at least fifteen days shall elapse between the publication and the date of the hearing. In addition to notice by publication, and at least ten days prior to the hearing, a good faith attempt to notify the owner or owners of record of the property where the private crossing is located shall be made by the commission by sending an official notice by registered or certified mail of the time and place of the hearing to the address or addresses indicated in the mortgage and conveyance records of the parish. The public hearing shall be held not less than sixty days after receipt of request of the railroad company as provided in Subsection A of this Section.

C. If, after such public hearing, the commission determines that closure or removal of such private crossing is necessary for safety and in the best interest of the public, the commission shall publish in the official journal of the parish where such crossing is located and in the commission's official bulletin a notice stating the manner in which such closure or removal shall be made and the date of such.

As Act No. 530 did not have an effective date and was passed in the 2008 regular session

of the Louisiana Legislature, it became effective on August 15, 2008. *See* 2008 La. Sess. Law

Serv. Act 530 (West); LA. CONST. art. 3, § 19.

On June 30, 2010, the Louisiana Legislature amended La. Rev. Stat. 48:394, so that it

now provides as follows:

Private crossing elimination

A. (1) Any railroad company operating in this state which desires to close or remove a private crossing shall, no less than one hundred eighty days prior to the proposed closing or removal, provide a written request by registered or certified mail to the Louisiana Public Service Commission and to the owner or owners of record of the

6

private crossing traversed by the rail line. The written request shall state *the manner in which such private railroad crossing unreasonably burdens or substantially interferes with rail transportation.*

C. If, after such public hearing, the commission determines that *the private railroad crossing unreasonably burdens or substantially interferes with rail transportation,* the commission shall publish in the official journal of the parish where such crossing is located and in the commission's official bulletin a notice stating the manner in which such closure or removal shall be made and the date of such.

*D. The provisions of this Section shall not apply when a private landowner or landowners and a railroad company enter into a consensual or negotiated written agreement or agreements to close a private railroad crossing.*

2010 La. Sess. Law Serv. Act 858 (West) (amended language in italics).

Both the original and amended versions of the Act require railroads seeking to close private

railroad crossings to first request permission in an administrative forum.

Plaintiffs filed this lawsuit in state court on January 22, 2007. On March 21, 2007, Union

Pacific removed the lawsuit to this Court. On December 21, 2007, Union Pacific filed a

Counterclaim seeking declaratory and injunctive relief regarding Plaintiffs' private crossings. [Doc.

No. 16].

In its previous Ruling, the Court found that La. Rev. Stat. 48:394 did not apply to Plaintiffs'

private crossings closed before June 30, 2008,[3] but did apply to Plaintiffs' private crossings which

were not closed before the initial Act was passed on June 30, 2008. The Court ruled that the Act was

substantive and, thus, did not apply retroactively in the absence of contrary legislative expression.

---

[3] As noted above, the effective date of Act No. 530, which created La. Rev. Stat. 48:394, was August 15, 2008, not June 30, 2008, the date of its enactment. However, the record indicates that no crossings were closed after this lawsuit was filed on January 22, 2007; therefore, the effective date does not change the Court's analysis or disposition of the claims in this matter.

Also, although Plaintiffs contended in their Petition that a few crossings had been removed when they filed their lawsuit [Doc. No. 1-1, p. 3, ¶ 16], Plaintiffs now assert that only a single crossing was closed before this lawsuit commenced. [Doc. No. 106, p. 1].

7

While the Court finds no reason to set aside its previous Ruling on this issue, the Court will address Union Pacific's arguments regarding the applicability of the Act to this lawsuit.

Non-retroactive laws enacted after the filing of a lawsuit do not typically apply to the claims in the lawsuit. *See Mistich v. Volkswagen of Germany, Inc.*, 95-0939 (La. 1/29/96); 666 So.2d 1073, 1080; *Gilboy v. Am. Tobacco Co.*, 582 So.2d 1263, 1264 (La. 1991). However, this general rule was established in cases where the facts forming the basis of the cause of action were completed before the lawsuit was filed. *See id.* Here, the parties seek declaratory and injunctive relief regarding private crossings that were not closed before the lawsuit was filed or the law became effective, and, thus, the facts giving rise to their causes of action are ongoing. Since both Plaintiffs and Union Pacific seek injunctive relief over the unclosed crossings, they implicitly assert that irreparable injury is imminent or threatened, i.e., the injury has not yet occurred. *See Johnson v. Lee*, 352 So.2d 303, 304 (La. Ct. App. 1977) (citing *Greenberg v. DeSalvo*, 229 So.2d 83, 86 (La. 1969)) ("Our courts will extend injunctive relief only when irreparable injury is imminent . . . ."). Union Pacific posted notice of its intent to close Plaintiffs' crossings, and this threat is a continuing one. Thus, the Court's application of the Act to the unclosed crossings is prospective, not retroactive.

On the other hand, the facts forming the basis for the causes of action over the closed crossings were completed before the lawsuit was filed and the law was enacted. *See Burks v. Christus Health Monroe*, No. 39,540, p. 4 (La. App. 2 Cir. 4/6/05); 899 So.2d 775, 778 (applying a substantive law prospectively to acts that occurred after a law's effective date, while not applying the law to acts that occurred before the law's effective date). Regarding these crossings, irreparable injury is not imminent, and any injury has already been suffered. Therefore, the issue of whether La. Rev. Stat. 48:394 applies retroactively only affects the crossings that were closed before the law's

8

enactment.

## A.    Retroactivity Analysis

Union Pacific argues that the Act is substantive and, thus, only applies prospectively. Plaintiffs and the State of Louisiana argue that the Act is procedural and, thus, applies prospectively and retroactively.

In the absence of an express provision,[4] the Court must classify the Act as substantive, procedural, or interpretive. *St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So.2d 809, 817 (La. 1992). Article 6 of the Louisiana Civil Code states, "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Thus, if La. Rev. Stat. 48:394 is substantive, it does not apply retroactively. If La. Rev. Stat. 48:394 is procedural or interpretive, it does apply retroactively. In this case, the parties agree that the law is not interpretive, so the Court's inquiry is limited to whether the law is substantive or procedural.

"Substantive laws either establish new rules, rights, and duties or change existing ones." *Id.* "[P]rocedural laws are those which prescribe a method for enforcing a substantive right and relate to the form of the proceedings or the operation of the laws." *Sawicki v. K/S Stavanger Prince*, No. 01-528, p. 8 (La. 12/7/01); 802 So.2d 598, 603. In *Sawicki v. K/S Stavanger Prince*, the Louisiana Supreme Court found that a law affecting the validity of forum selection clauses was procedural. 802 So.2d at 604. The Court noted that "[t]he enactment does not change or alter plaintiff's cause of action but merely affects the process for judicial assertion of a substantive claim, i.e., the forum

---

[4] If the Legislature made an express provision, then the Court's inquiry ends, absent constitutional concerns. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371, p. 18 (La. 7/1/08); 998 So.2d 16, 29-30. Here, the Legislature did not make an express provision.

9

in which the claim can be adjudicated." *Id.*

The State of Louisiana argues that the law is procedural because "it merely establishes an administrative review process that does not ultimately restrict access to the courts." [Doc. No. 118, p. 15]. However, the State downplays the significance of La. Rev. Stat. 48:394. The Act does not merely add a layer of process to the otherwise-static obligations of railroads.

In the present case, La. Rev. Stat. 48:394 alters the parties' causes of action and affects more than the process for asserting substantive claims. First, the Act establishes an altogether-new administrative hearing requirement that railroads must fulfill before closing a private crossing, thereby creating a new obligation for the railroads. It is not the case that railroads previously had to go to court before closing a private crossing and now must simply appear before an administrative tribunal first. Before the Act, a railroad could close a crossing unilaterally, and litigation only came about if a private party sued the railroad. Under the Act, railroads must request permission from the Louisiana Public Service Commission ("LPSC") to close a private railroad crossing, unless the railroad and the private-property owner agree to the closure.

Second, the Act provides a new substantive standard by which any claim over a private-crossing closure is adjudicated. Before the enactment of this law, any dispute over whether a railroad could close a crossing was decided in the courts based on Louisiana property or contract law. Under the Act, railroads must demonstrate to the Commission how a private crossing "unreasonably burdens or substantially interferes with rail transportation" before they are allowed to close the crossing.[5]

_____

[5] Moreover, the Commission's determinations are meaningful. Although the railroads can appeal orders of the Commission in the state courts, those courts will likely give considerable weight to the decisions of the Commission. *See Entergy Louisiana, LLC v. Louisiana Pub. Serv.*

In sum, because La. Rev. Stat. 48:394 changes railroads' existing rights and duties under Louisiana law, the law is substantive, not procedural. Because the Act is substantive and does not state that it applies retroactively, the Act only applies prospectively.

For the reasons discussed, the Court finds that, while La. Rev. Stat. 48:394 does not apply retroactively to the crossings that were closed before the Act's effective date, the Act does apply to the crossings still in existence on the Act's effective date.

### B.     Preemption

Next, Union Pacific argues that La. Rev. Stat. 48:394 is facially preempted by federal law. Union Pacific challenges the Act on the basis that it conflicts with the express preemption clause in 49 U.S.C. § 10501(b), a section of the Interstate Commerce Commission Termination Act ("ICCTA"). In its previous Ruling, the Court agreed with the Middle District of Louisiana's finding that the Act was not preempted. [Doc. No. 91, pp. 6-7 n.2 (citing *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, No. 09-396, 2010 WL 2710536 (M.D. La. Nov. 18, 2010)]. While the Court finds no reason to set aside its conclusion, it will address Union Pacific's preemption arguments.

"[T]he Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) (quoting U.S. CONST. art. VI, cl. 2). In evaluating the preemptive effect of a federal statute, "'[t]he purpose of Congress is the ultimate touchstone.'" *Id.* (quoting *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). While a statute may have an express preemption clause, "it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Id.*

---

*Comm'n*, 2008-CA-0284, p. 10 (La. 7/1/08); 990 So.2d 716, 723 ("This court has held that an order of the [Commission] should not be overturned unless it is arbitrary and capricious, a clear abuse of authority, or not reasonably based upon the factual evidence presented.").

### 1.  Presumption Against Preemption

Preemption analysis begins "'with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States." *Id.* (citing *Lohr*, 518 U.S. at 485). Although railroads have long been subject to extensive federal regulation, the Fifth Circuit has noted that, historically, "'[t]he care of grade crossings is peculiarly within the police power of the states.'" *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 333 (5th Cir. 2008) (quoting *Lehigh Valley R.R. Co. v. Bd. of Pub. Util. Comm'rs*, 278 U.S. 24, 35 (1928)).

Based on the assumption that the historic police powers of the state will not be superseded without a clear congressional statement, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Id.* (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). "Thus, the presumption [against preemption] operates both to prevent and to limit preemption." *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc).

### 2.  Whether La. Rev. Stat. 48:394 Is Preempted

At issue here is whether La. Rev. Stat. 48:394 is preempted by § 10501(b) of the ICCTA. In *Franks*, the Fifth Circuit ruled that a plaintiff's state law possessory action, based on generally applicable Louisiana property laws affecting railroad crossings, was not preempted by § 10501(b). 593 F.3d at 406. *Franks* provides the framework for the issue currently before the Court.

The *Franks* court noted that when a "statute contains a preemption clause, statutory construction analysis begins with 'the plain wording of the clause, which necessarily contains the

best evidence of Congress' pre-emptive intent.'" *Id.* at 408 (quoting *CSX Transp., Inc. v.*

*Easterwood*, 507 U.S. 658, 664 (1993)). The relevant language in the ICCTA reads as follows:

> The jurisdiction of the Board over--
>
> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part *with respect to regulation of rail transportation* are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b)(1)-(2) (emphasis added).

According to *Franks*, the second sentence is the relevant sentence of § 10501(b) for

preemption purposes. 593 F.3d at 410. Thus, any state laws that regulate—i.e., manage or

govern—rail transportation are expressly preempted.[6] *Id.* The *Franks* standard has two components:

(1) an object of the law must be "transportation"; and (2) the law must regulate that transportation.[7]

---

[6] Union Pacific argues that the Fifth Circuit has "adopted" the Surface Transportation Board's ("STB") facial preemption test. The Court disagrees. That STB test provides that "any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the [STB] has authorized" is facially preempted. *Franks*, 593 F.3d at 410 (quoting *Barrois*, 533 F.3d at 332). Although *Franks* said its express preemption standard was "consistent" with the STB's "explanation of preemption under the ICCTA," it failed to adopt or apply the STB language. *See id.* at 410. Further, while *Barrois*, a complete preemption case, found the STB test "instructive," it did not adopt the STB test for express preemption cases. *See Barrois*, 533 F.3d at 332. Finally, although *Franks* adopted the STB's as-applied preemption analysis "for implied preemption under the ICCTA," *Franks*, 593 F.3d at 414, Union Pacific does not challenge La. Rev. Stat. 48:394 on an as-applied basis.

[7] Union Pacific argues that, because the preamble to the Act states the purpose of "prohibit[ing] the development of transportation infrastructure by prohibiting closure of private

*See id.* at 409-11.

In *Franks*, the Fifth Circuit addressed the argument that "railroad crossings fit within the definition of 'transportation' under § 10501(b)(1)." 593 F.3d at 409. The statute that gives the definition of transportation under the ICCTA provides:

> "transportation" includes–
>
> (A) a locomotive, car vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, *by rail*, regardless of ownership or an agreement concerning use . . . .

49 U.S.C. § 10102(9)(A) (emphasis added).

Here, the object of La. Rev. Stat. 48:394 is railroad crossings. Whether railroad crossings fit within the definition of transportation under the ICCTA depends on whether they are "property, facilit[ies], instrumentalit[ies], or equipment of any kind related to the movement of passengers or property, or both, by rail." *Id.* On the one hand, the first part of the definition, "property, facility, instrumentality, or equipment of any kind related to," lends itself to a broad interpretation. On the other hand, to count as transportation, railroad crossings, which facilitate the passage of cars over railroad tracks, must relate to moving passengers or property *by rail*. *See Island Park, LLC v. CSX Transp., Inc.*, 559 F.3d 96, 103-04 (2d Cir. 2009) (state's order closing a rail crossing for safety reasons was not related to "the movement of passengers or property . . . *by rail*" (emphasis and alteration in original)).

Even assuming, without ruling, that railroad crossings are included in "property, facility,

---

railroad crossings," the Act is "irrefutably preempted" by the ICCTA. [Doc. No. 102, p. 12]. Although it is unclear to the Court what the preamble language means, the preemption inquiry is whether the Act regulates rail transportation. If the Act does not regulate rail transportation, then any purpose stated in a preamble is irrelevant.

14

instrumentality, or equipment," it is clearly plausible to read the statutory language to exclude railroad crossings from the "by rail" component of the statute. And, as noted above, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Good*, 129 S. Ct. at 543 (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)). "Thus, the presumption operates both to prevent *and to limit* preemption." *Franks*, 593 F.3d at 407 (emphasis added).

Therefore, the Court accepts the reading that disfavors preemption and finds that railroad crossings do not fit within the definition of transportation under the ICCTA. Because La. Rev. Stat. 48:394 does not manage or govern rail transportation, it is not preempted by 49 U.S.C. § 10501(b).

## C.    Constitutional Issues

Union Pacific next raises a number of state and federal constitutional issues. The Louisiana Supreme Court has established the following standards for reviewing the constitutionality of an act of the Louisiana Legislature:

> As a general rule, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. As a result, a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question. A constitutional limitation on the legislative power may be either express or implied.

*City of New Orleans v. La. Assessors' Retirement & Relief Fund*, No. 05-2548, pp. 11-12 (La. 10/1/07); 986 So.2d 1.

Under federal law, statutes are also presumed to be constitutional, and courts similarly avoid interpretations that lead to constitutional problems. *Heller v. Doe*, 509 U.S. 312, 320 (1993); *Bush*

15

*v. Vera*, 517 U.S. 952, 992 (1996) (O'Connor, J., concurring) (citing *Fairbank v. United States*, 181 U.S. 283, 285 (1901)); *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001).

### 1.    Unconstitutional Divestment of Property Rights

Union Pacific argues that "[r]etroactive application of the Act would violate Union Pacific's rights under both the Louisiana and federal Due Process Clauses." [Doc. No. 102, p. 30]. Union Pacific cites case law establishing that "[w]hen a party acquires a right . . . to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees." *Falgout v. Dealers Truck Equip. Co.*, No. 98-3150, p. 12 (La. 1999); 748 So.2d 399, 407 (citing *Cole v. Celotex*, 599 So.2d 1058, 1063 (La. 1992)).

In *Cole v. Celotex*, the Louisiana Supreme Court stated,

> Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested. Stated differently, "statutes enacted after the acquisition of such a vested property right . . . cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties."

599 So.2d at 1063-64 (quoting *Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic*, 470 So.2d 878, 879 (La. 1985)).

However, as the Court has already stated in its retroactivity analysis, this case presents claims for declaratory and injunctive relief. Thus, because the facts that give rise to the parties' causes of action are ongoing, the Court's application of La. Rev. Stat. 48:394 is prospective, not retroactive. *See Walls v. Am. Optical Corp.*, 98-0455, p. 5 (La. 1999); 740 So.2d 1262, 1266 ("A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . . [T]he court must ask whether the new provision attaches new legal consequences *to events completed before its enactment*." (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994) (emphasis added))).

In each of the cases Union Pacific cites, the facts forming the basis of the cause of action were completed. *See Burmaster v. Plaquemines Parish Government*, 07-2432 (La. 5/21/08); 982 So.2d 795; *Cole*, 599 So.2d at 1058; *Walls*, 740 So.2d at 1262; *Falgout*, 748 So.2d at 399; *Cheron v. LCS Correction Servs., Inc.*, 04-0703 (La. 1/19/05); 891 So.2d 1250. Here, the Court is not applying the Act retroactively because the facts forming the basis of the parties' causes of action over the unclosed crossings are ongoing and, thus, the applicable law is subject to change. As there is no retroactive application, the Court is not unconstitutionally divesting Union Pacific's property rights.

### 2.    Void for Vagueness

Union Pacific also contends that La. Rev. Stat. 48:394 is void for vagueness because (1) it delegates legislative authority to the LPSC with insufficient standards to prevent arbitrary and discriminatory action and (2) it insufficiently informs railroads what is expected of them.

With regard to the first argument, Union Pacific contends that the Act authorizes the LPSC to make decisions affecting the property rights of railroads "so long as the LPSC determines, without parameters or standards, that it does not interfere with rail transportation." [Doc. No. 102, p. 33]. In Union Pacific's view, "the LPSC's prerogative is limitless."

The Court finds that Union Pacific's argument fails. The Louisiana Supreme Court has established a three-prong test for deciding the constitutionality of the Legislature's delegation of authority to an administrative agency. *See State v. All Pro Paint & Body Shop, Inc.*, 93-1316 (La. 7/5/94); 639 So.2d 707, 712. The delegation is constitutional "if the enabling statute (1) contains a clear expression of legislative policy, (2) prescribes sufficient standards to guide the agency in the execution of that policy, and (3) is accompanied by adequate procedural safeguards to protect against

abuse of discretion by the agency."[8]  *Id.*

As to the first prong, the Court finds that the legislative policy of La. Rev. Stat. 48:394 is clear.  The legislative policy is to prevent railroads from closing private railroad crossings when there is no substantial need for the closure.  The Act clearly expresses this policy by requiring that railroads request permission from the LPSC before closing any private railroad crossing and mandating that railroads state the manner in which the crossing unreasonably burdens or substantially interferes with rail transportation in their request.

As to the second prong, the Court finds that La. Rev. Stat. 48:394 prescribes sufficient standards to guide the LPSC's execution of the legislative policy.  Upon a railroad's application to close a crossing, the Act requires the LPSC to conduct a public hearing and determine whether the railroad crossing in question unreasonably burdens or substantially interferes with rail transportation.  Although Union Pacific argues that the Act gives limitless power to the LPSC, its contention conflicts with the restraints on the LPSC's authority listed above.

As to the third prong, the Court finds that the Act has adequate procedural safeguards to protect against abuse of discretion.  Under the Louisiana Constitution, any action taken by the LPSC is subject to judicial review.  *See* LA. CONST. art. IV, § 21(e).  If the LPSC abuses its discretion in executing the standards provided in the Act, an aggrieved party can challenge the LPSC's action in

---

[8] Since the federal standard is less demanding, the fact that La. Rev. Stat. 48:394 is constitutional under the state standard establishes that it satisfies the federal standard as well. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) ("[W]e repeatedly have said that when Congress confers decisionmaking authority upon agencies Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928))); *Touby v. United States*, 500 U.S. 160, 163 (1991) (upholding legislation that provided the Attorney General with "discretion to schedule controlled substances on a temporary basis" because the statute's "'imminent hazard to the public safety' standard" provided an "intelligible principle").

state district court, and the district court's decision is directly appealable to the Louisiana Supreme

Court. *Id.* Therefore, since La. Rev. Stat. 48:394 satisfies all three prongs of the delegation test, it

contains sufficient standards to prevent arbitrary and discriminatory action.

With regard to its second vagueness challenge, Union Pacific argues that it will be forced to

"guess which crossings . . . might meet the LPSC's . . . definition of 'unreasonable burden' or

'substantial interference,'" [Doc. No. 102, p. 34 (emphasis removed)].

The Court finds that Union Pacific's second argument also fails. As the case law cited by

Union Pacific establishes, "[A] law fails to meet the requirements of the Due Process Clause if it is

so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves

judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is

not in each particular case." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (U.S. 1966); *State in

Interest of Hunter*, 387 So.2d 1086, 1087 (La. 1980). The Fifth Circuit has formulated the inquiry

as follows:

> A statute is unconstitutionally vague if it does not give a "person of ordinary
> intelligence a reasonable opportunity to know what is prohibited." *United States v.
> Bird*, 124 F.3d 667, 683 (5th Cir. 1997) (quoting *Grayned v. City of Rockford*, 408
> U.S. 104, 108, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972)). The void-for-vagueness
> doctrine has been primarily employed to strike down criminal laws. *See Okpalobi
> v. Foster*, 190 F.3d 337, 358 n.10 (5th Cir. 1999). In the civil context, "the statute
> must be 'so vague and indefinite as really to be no rule at all.'" *Seniors Civil
> Liberties Ass'n v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992) (quoting *Boutilier v.
> INS*, 387 U.S. 118, 123, 87 S. Ct. 1563, 18 L.Ed.2d 661 (1967)).

*Union Pac. R.R. Co.*, 2010 WL 4806767, at *3 (quoting *Groome Res. Ltd. v. Parish of Jefferson*, 234

F.3d 192, 217 (5th Cir. 2000)); *accord State v. Thompson*, 399 So.2d 1161, 1168 (La. 1981) ("A

statute is unconstitutionally vague if men of common intelligence must guess as to its meaning.").

La. Rev. Stat. 48:394 clearly expresses the conduct prohibited and required by affected

parties and provides legally fixed standards for the LPSC. Under the Act, a railroad is prohibited

from closing a private railroad crossing unless it first obtains permission from the LPSC or reaches an agreement with the relevant private-property owner. Upon a railroad's application to close a crossing, the LPSC will determine whether the crossing unreasonably burdens or substantially interferes with rail transportation. If the agency finds that the crossing unreasonably burdens or substantially interferes with rail transportation, then it will publicly notice "the manner in which such closure or removal shall be made and the date of such." 2010 La. Sess. Law Serv. Act 858 (West).

Contrary to Union Pacific's argument, a law delegating authority to an administrative agency is not void for vagueness because affected parties believe they will not be able to make successful predictions about agency decisions. The Act informs railroads what it requires of them and provides legally fixed standards for the LPSC to apply when executing its authority.

Because both of Union Pacific's void-for-vagueness arguments fail, the Court finds that La. Rev. Stat. 48:394 is not unconstitutionally vague.

### 3. Unconstitutional Taking

Union Pacific next argues that La. Rev. Stat. 48:394 authorizes an unconstitutional taking under Article I, Section 4 of the Louisiana Constitution. Specifically, Union Pacific argues that the Act is unconstitutional because it authorizes a taking without compensation that is not for a public purpose. Under the Louisiana Constitution, "Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property." LA. CONST. art. IV, § 4. According to Union Pacific, because of the Act, "Union Pacific's legal right with respect to its property—its right to exclusive dominion and control over that property—has been clearly affected. . . . It cannot remove any [private railroad] crossing . . . without complying with a burdensome state-imposed administrative process." [Doc. No. 102, p. 39]. Thus, Union Pacific's argument is predicated on the fact that it owns the private railroad crossings at issue, or at least owns the property over which

the private railroad crossings run.

"As a general rule, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality." *La. Assessors' Retirement & Relief Fund*, 986 So.2d at 11. The Court finds that Union Pacific has not carried its burden of demonstrating that the Act authorizes an unconstitutional taking because it has not shown that the Act affects the property rights it asserts.

In this case, although Union Pacific alleges a taking of the rights conferred by property ownership, it has not demonstrated that it owns the property in question. As explained below, the Court will consider Union Pacific's contention that its right-of-way documents give it property ownership rights at trial. If Union Pacific does not possess ownership rights in the property disputed in this matter, then the Act cannot authorize a taking of Union Pacific's "right to exclusive dominion and control over that property."

Even assuming that Union Pacific possesses ownership rights affected by the Act, its unconstitutional-taking claim still fails. In order to decide the validity of takings claims, the Louisiana Supreme Court has adopted a three-pronged test: (1) whether "a person's legal right with respect to a thing or an object has been affected"; (2) whether "property, either a right or a thing, *has been taken or damaged, in a constitutional sense*"; and (3) "whether the taking or damage is for a public purpose under Article I, § 4" of the Louisiana Constitution. *State Through Dep't of Transp. & Develop. v. Chambers Inv. Co.*, 595 So.2d 598, 603 (La. 1992) (emphasis added).

As the Louisiana Supreme Court in *Chambers* noted, the concept of "taking" has shifted from a government expropriation of real property to more abstract "takings" of property rights caused by government acts. *Id.* at 601-02. Despite the expanded definition of what constitutes a taking, in order for a property right to be taken or damaged, in a constitutional sense, there must be a

21

substantial interference with the free use and enjoyment of property. *See id.* at 602 ("[I]t is now hornbook law that *any* substantial interference with the free use and enjoyment of property may constitute a taking of property within the meaning of federal and state constitutions."); *Suire v. Lafayette City-Parish Consol. Government*, No. 04-1459, pp. 34-35 (La. 4/12/05); 907 So.2d 37, 61 (citing *Simmons v. Bd. of Comm'rs of Bossier Levee Dist.*, 624 So.2d 935, 951 (La. Ct. App. 1993) ("The pivotal issue is whether the governmental interference with the free use and enjoyment of private property is substantial.")).

Here, as noted by the Middle District of Louisiana, "[a]ll that is required of a railroad is that they do not close a private railroad crossing. The State is not 'taking' the railroad's property." *Union Pac. R.R. Co.*, 2010 WL 4806767, at *5. Placing a restriction on a railroad's ability to close private railroad crossings does not cause a substantial interference with the use and enjoyment of its property. The Act does not disrupt the operations of railroads in any substantial way. Moreover, in the event that a private railroad crossing does cause a substantial interference with rail transportation, by the very language of the Act, the railroad will be allowed to close the crossing. Based on the foregoing analysis, La. Rev. Stat. 48:394 does not authorize an unconstitutional taking.

### 4. Equal Protection

Union Pacific contends that La. Rev. Stat. 48:394 also violates its right to equal protection under the United States and Louisiana Constitutions. It argues that the Court should subject the Act to strict scrutiny "[b]ecause the Act creates a suspect classification that impairs fundamental rights," and that the Act fails under either the strict scrutiny or rational basis tests used in constitutional equal protection challenges. [Doc. No. 102, p. 44].

#### a. Federal Equal Protection

Under the federal Equal Protection Clause, a law is subjected to heightened scrutiny when

22

it burdens a fundamental right or involves suspect classifications. *Romer v. Evans*, 517 U.S. 620, 631 (U.S. 1996). If a law does not burden a fundamental right or involve suspect classifications, then it is "entitled to a 'strong presumption of validity'" and receives rational basis scrutiny. *Vacco v. Quill*, 521 U.S. 793, 799-800 (1997) (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). Laws that impinge upon property rights are given rational basis review. *See Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 249-50 (5th Cir. 2000).

Under rational basis review, there must be "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320. Further, "[a] statute is presumed constitutional, and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'" *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (U.S. 1973)).

Here, La. Rev. Stat. 48:394 does not burden a fundamental right or involve a suspect classification. Therefore, it is reviewed under the rational basis standard and clearly survives this review. Any number of rational reasons justify the disparate treatment of railroads in the Act, such as the fact that railroad tracks typically traverse many different private property tracts and, therefore, pose unique hurdles for adjacent property owners who require access to public roads. Railroads are situated differently than other property owners and cannot be compared with typical private-property owners under an equal protection analysis. In sum, the burden is on Union Pacific to demonstrate that the Act has no rational basis, and it has failed to do so.

**b.     State Equal Protection**

The Louisiana Constitution provides a different equal protection standard than the United States Constitution. *State v. Granger*, 07-2285, p. 10 (La. 5/21/08); 982 So.2d 779, 787-88. Under the Louisiana Constitution,

> Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.

*Id.* at 788-89 (quoting *Sibley v. Bd. of Supervisors of La. State Univ.*, 477 So.2d 1094, 1107-08 (La. 1985) (footnotes omitted)).

Based on the above framework, Union Pacific must satisfy the third situation. "Laws that create classifications in the third situation . . . are presumed to be constitutional." *Id.* (internal quotation marks and citation omitted). Thus, Union Pacific must overcome the presumption of constitutionality and show that La. Rev. Stat. 48:394 "does not suitably further any appropriate state interest." *Id.* at 789.

In briefing the issue, Union Pacific focused on the differential treatment provided to railroads, which is only relevant if the Act does not further an appropriate state interest. However, the State of Louisiana identified the interests for the Act: "enabling access to mineral and agricultural resources; preventing motor vehicle-related deaths and injuries; and of course, protecting property rights of individual citizens." [Doc. No. 114-2, p. 27]. The Act ensures greater access to mineral and agricultural resources and lessens the likelihood that individual citizens will have to file lawsuits against railroads in order to protect their property or contractual rights. The Court finds that La. Rev. Stat. 48:394 suitably furthers the appropriate interests identified by the State. Therefore, Union Pacific's state equal protection challenge fails.

### 5.    Separation of Powers and Original Jurisdiction

Union Pacific next argues that La. Rev. Stat. 48:394 displaces Louisiana property law set

forth in the Civil Code, under which the crossings are a matter of private dispute between the parties. Because "[t]he resolution of disputes between **private** property owners is a function of the judicial branch of government and not that of the **Public** Service Commission," [Doc. No. 102, p. 45], Union Pacific concludes that the Act violates the separation-of-powers provisions contained in Article II, Sections 1 and 2 of the Louisiana Constitution. Finally, Union Pacific argues that the Act also violates Article V, Section 16 of the Louisiana Constitution, which gives state district courts exclusive original jurisdiction over cases involving title to immovable property.

Even assuming the Act displaces Louisiana property law, Union Pacific points to no constitutional prohibition on the Louisiana Legislature's ability to alter the laws governing property matters. Further, the Court finds no merit in Union Pacific's argument that there has been a violation of the separation of powers because the LPSC may consider disputes between private property owners under the Act and the agency's name contains the word "public." Mandatory administrative review procedures have been upheld as constitutional in the past, and there is no bright-line prohibition on state administrative agencies exercising delegated power that contains some characteristics of traditional adjudication. *See Everett v. Goldman*, 359 So.2d 1256 (La. 1978) (upholding the constitutionality of Louisiana's Medical Malpractice Act).

The Court likewise finds no merit to Union Pacific's argument that the Act divests district courts of their exclusive original jurisdiction over cases involving title to immovable property. As Union Pacific concedes, under the Act, the LPSC's authority is limited to a determination of whether a private railroad crossing unreasonably burdens or substantially interferes with rail transportation. Indeed, the Court agrees with the Middle District of Louisiana that "[t]he Act does not empower the

25

LPSC to make any determinations about title to immovable property."[9] *Union Pac. R.R. Co.*, 2010 WL 4806767, at *7. Thus, the Court finds that La. Rev. Stat. 48:394 does not violate Article V, Section 16's vestment in state district courts of exclusive original jurisdiction over cases involving title to immovable property.

Because Union Pacific has failed to demonstrate that the Act is unconstitutional or preempted by federal law, Union Pacific's Motion for Partial Summary Judgment [Doc. No. 103] "dismissing plaintiffs' claim and/or defenses based upon [La. Rev. Stat. 48:394]" is DENIED.

### D.    Remaining Issues

#### 1.    Louisiana Property and Contract Law

In its previous Ruling [Doc. No. 91], the Court reserved for trial whether private crossings closed before the enactment of La. Rev. Stat. 48:394 were closed improperly and without authorization because there are genuine issues of material fact and issues of Louisiana property and contract law.[10] The Court also found that unclosed crossings or crossings closed on or after June 30, 2008, should be brought before the LPSC, pursuant to the Act. Based on the foregoing analysis, the Court finds no reason to modify its intended *sua sponte* judgment, except to clarify that the effective date of the Act is August 15, 2008, not June 30, 2008.[11]

---

[9] This determination also disposes of Union Pacific's argument that the Act "run[s] afoul of the Code of Civil Procedure, Article 80, regarding venue for matters involving interest in immovable property." [Doc. No. 102, p. 47]. Moreover, Article 80 does not prohibit the Legislature from changing the rules concerning where an action may be brought.

[10] Union Pacific's claim that federal regulation precludes the crossings sought by Plaintiffs because of maintenance issues is contingent upon the resolution of issues of state property and contract law. Therefore, the Court will reserve this claim for trial as well.

[11] There are no allegations that any crossings were closed between the passage of Act No. 530 on June 30, 2008, and its effective date of August 15, 2008.

## 2. Union Pacific's Motion Seeking Relief from Judgment

Union Pacific seeks relief from the Court's denial in part of its Motion for Summary Judgment. Union Pacific contends that the denial in part of its motion "was manifest error and requests reconsideration of that ruling." [Doc. No. 99].

In its previous Ruling, the Court denied Union Pacific's Motion for Summary Judgment on the owner Plaintiffs' requests for declaratory and injunctive relief regarding the "impropriety of Union Pacific's closure of any private crossings prior to June 30, 2008." [Doc. No. 91, p. 10]. In its motion seeking relief from final judgment, Union Pacific argues that the denial of its motion for summary judgment on this count was manifest error. Since there are genuine issues of material fact concerning Union Pacific's property claims, the Court finds no extraordinary circumstances justifying relief. Therefore, Union Pacific's motion seeking relief from judgment [Doc. No. 99] is DENIED on this count.

In its previous Ruling, the Court also denied Union Pacific's Motion for Summary Judgment "on Plaintiffs' requests for declaratory and injunctive relief regarding the closure of any private crossings in existence on or after June 30, 2008," finding that "[a]fter the enactment of La. Rev. Stat. 48:394, Union Pacific had no right to close any private crossings unless it first applied to the Louisiana Public Service Commission." [Doc. No. 91, p. 8]. Based on the foregoing analysis, the Court finds no extraordinary circumstances justifying relief. Therefore, Union Pacific's motion seeking relief from judgment is DENIED on this count, except to the extent that the relevant date of the closures is August 15, 2008.

In its previous Ruling, the Court also denied Union Pacific's Motion for Summary Judgment on Plaintiffs' claims regarding maintenance of natural drainage. The Court found that Union Pacific did not sufficiently address this claim. Union Pacific did not address this claim in its motion seeking

27

relief from judgment or in other documents submitted after the Court's initial Ruling. Therefore, Union Pacific's motion is DENIED on this count.

### 3. Union Pacific's Opposition to *Sua Sponte* Judgment

Finally, Union Pacific opposes the Court's intent to *sua sponte* grant summary judgment to Plaintiffs on certain of their requests for declaratory and injunctive relief. First, Union Pacific contends that La. Rev. Stat. 48:394 should not apply to the claims in this case. Based on the foregoing analysis, the Court finds that the Act applies to any crossings that were not closed before the Act's effective date of August 15, 2008.

Second, Union Pacific contends that some of its right-of-way documents confer ownership rights, while others confer servitudes only. Thus, it objects to the Court's intended declaration that Union Pacific "has only rights of way through the subject land." [Doc. No. 91, p. 12]. The Court will reserve for trial the question of whether Union Pacific possesses ownership rights in its rights of way, as there are genuine issues of material fact that preclude judgment on this matter.

Third, Union Pacific opposes the Court's intent to *sua sponte* grant a permanent injunction preventing it from closing any existing crossings without complying with La. Rev. Stat. 48:394. In light of the foregoing analysis, the Court will issue this injunction.[12]

Union Pacific also opposes the Court's intent to *sua sponte* dismiss certain of its requests for declaratory relief. In light of the foregoing analysis, the Court will dismiss Union Pacific's requests for declaratory relief as indicated.

Accordingly, Union Pacific's request for declaratory relief regarding existing crossings and request for injunctive relief barring Plaintiffs from interfering with the closure of private crossings

---

[12] Union Pacific concedes that it "posted its intention to close several private crossings in the area." [Doc. No. 2, p. 3, ¶ 17].

are DISMISSED WITH PREJUDICE. Union Pacific's request for an injunction barring Plaintiffs from creating more private crossings is DISMISSED WITHOUT PREJUDICE.[13]

## IV.    CONCLUSION

Based upon the foregoing reasons, Union Pacific's Motion for Partial Summary Judgment for any claims or defenses based upon La. Rev. Stat. 48:394 [Doc. No. 103] is DENIED.

Union Pacific's Motion for Reconsideration [Doc. No. 99], construed as a motion seeking relief from judgment, is also DENIED. The Court finds no extraordinary circumstances justifying relief and will reserve for trial issues of fact and Louisiana property and contract law regarding any private crossings closed before August 15, 2008.

The Court will *sua sponte* enter judgment (1) granting a permanent injunction to prevent Union Pacific from closing any existing crossings without complying with La. Rev. Stat. 48:394, (2) dismissing with prejudice Union Pacific's request for declaratory relief regarding existing crossings and Union Pacific's request for injunctive relief barring Plaintiffs from interfering with the closure of private crossings, and (3) dismissing without prejudice Union Pacific's request for an injunction barring Plaintiffs from creating more private crossings.

All other claims remain pending in this matter.

MONROE, LOUISIANA, this _____ day of March, 2011.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[13] Union Pacific does not allege that Plaintiffs have threatened or attempted to create any more crossings, and there is no evidence before the Court that Plaintiffs have done so. Therefore, there is no conduct to be enjoined at this time.