UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| R. T. FAULK, III, ET AL. | CIVIL ACTION NO. 07-0554 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNION PACIFIC RAILROAD COMPANY | MAG. JUDGE MARK L. HORNSBY |

## RULING

Pending before the Court are cross-motions for summary judgment filed by Plaintiffs Corey Farms, LLC; R.T. Faulk, III; Faulk Farms, Inc.; T.P. Godwin; Joanne Hodges; McHenry Farms, LLC; McHenry Realty Partnership; William G. Nadler; River Valley Properties; and Sherman Shaw ("Plaintiffs") and Defendant Union Pacific Railroad ("Union Pacific"). For the following reasons, Plaintiffs' Joint Motion for Partial Summary Judgment [Doc. No. 153] is GRANTED, and Union Pacific's Motion for Summary Judgment [Doc. No. 154] is DENIED.

**I.     FACTS AND INTRODUCTION**

This is a dispute over the closure of private railroad crossings. Union Pacific operates a railroad right of way system that includes a 3.15 mile section south of Monroe, Louisiana, along Highway 165 between Harmon-Johnson Road and Prairie Road in Ouachita Parish (from railroad Mile Post 508.40 to Mile Post 511.55). Plaintiffs are the owners by fee title or are lessees of the property adjacent to the railroad.[1] Union Pacific, through its predecessors in title, acquired real property rights over Plaintiffs' property, although Plaintiffs and Union Pacific dispute whether the rights acquired were servitudes of passage or fee title.

---

[1] The railroad runs north and south. Plaintiffs' property is located to the east of the tracks, and Highway 165 is to the west of the tracks.

In this section of the railroad right of way system, there are 13 crossings. Of those, three are public crossings which are not at issue (Crossings #1 and #6 and #13, which is both public and outside the boundaries of Plaintiffs' property).

There are ten (10) private crossings. The parties agree that Union Pacific's property interests in these crossings originated with the nine deeds identified in the affidavit of Douglas Feagan, Union Pacific's Senior Manager Real Estate-Engineering & Operations, and which was attached as Exhibit C to Union Pacific's Motion for Summary Judgment [Doc. No. 154-4].

The ten private crossings are identified as follows:

(1)  218-V (Crossing #2,[2] Mile Post Marker ("MP") 508.53 [Doc. No. 154-4 Exh. C-1]);

(2)  209-W (Crossing #3, MP 509.07 [Doc. No. 154-4 Exh. C-1]);

(3)  147-B (Crossing #4, MP 509.25 [Doc. No. 154-4, Exh. C-2);

(4)  145-M (Crossing #5, MP 509.70 [Doc. No. 154-4 Exhs. C-3 and C-4]);

(5)  143-Y (Crossing #7, MP 510.50 [Doc. No. 154-4 Exh. C-5]);

(6)  142-S (Crossing #8, MP 510.67 [Doc. No. 154-4 Exh. C-5]);

(7)  141-K (Crossing #9, MP 510.90 [Doc. No. 154-4 Exh. C-5]);

(8)  152-X (Crossing #10, MP 511.17 [Doc. No. 154-4 Exhs. C-5 & C-6]);

(9)  151-R (Crossing #11, MP 511.30 [Doc. No. 154-4 Exh. C-6 and/or C-7]); and

(10) 150-J (Crossing #12, MP 511.55 [Doc. No. 154-4 Exh. C-8]).

Although Union Pacific constructed and maintains the crossings, the Plaintiff-landowners have been assessed with and paid the *ad valoreum* property taxes on the property where the

---

[2]The parties refer to the crossings as Crossing #1, etc., for ease of reference, rather than using the DOT crossing numbers.

crossings are located. The only title instruments pertaining to the property at issue are in evidence. With regard to Crossings #4, #5, #11, and #12, the parties agree that the language of the agreements indicate that a servitude of passage only was conveyed to Union Pacific, but dispute the nature of Union Pacific's real right with regard to the remaining six crossings.

The parties agree that the issue of ownership of the crossings can be resolved on documentary evidence, without the need for trial.

## II.	PROCEDURAL HISTORY

On January 22, 2007, Plaintiffs filed suit against Union Pacific in the Fourth Judicial District, Ouachita Parish, Louisiana, requesting declaratory and injunctive relief. Specifically, Plaintiffs requested in their Petition that the Court declare that (1) Union Pacific has only a conventional servitude of passage, (2) "Plaintiffs have the right to access and use their land in its entirety, in any way which is not inconsistent with the use of the right of way by" Union Pacific, (3) the private crossings constitute a reasonable use of their own land by Plaintiffs and do not reasonably impose on Union Pacific's right of way, (4) the crossings already destroyed were destroyed improperly and without authorization, and (5) Union Pacific is obliged to properly maintain the natural drainage of water across its rights of way and that it is not satisfying that obligation. [Doc. No. 1-1, ¶ 24]. Plaintiffs moved for a preliminary injunction to prevent Union Pacific from closing any of the private crossings pending final judgment without the written consent of the owner of the property on which the crossing lies and prior notice to the Court and the parties. Plaintiffs moved for a permanent injunction on the same grounds and on the additional basis that Union Pacific be required to restore any private crossings which have been closed without the owner's consent. Finally, Plaintiffs sought equitable and legal relief the Court deems appropriate.

On March 21, 2007, Union Pacific removed the case to this Court on the basis of diversity jurisdiction. [Doc. No. 1].

On December 21, 2007, Union Pacific filed a Counterclaim against Plaintiffs [Doc. No. 16], requesting declaratory and injunctive relief allowing it to close the private crossings and preventing Plaintiffs from interfering in the closures and from creating new crossings.

On January 11, 2008, Union Pacific filed a Motion for Summary Judgment arguing that it was entitled to summary judgment on Plaintiffs' claims because they had not provided sufficient evidence of ownership of the land and, therefore, cannot prove they have a right to the private railroad crossings. [Doc. No. 17]. After briefing was complete, on April 8, 2008, the Court stayed this action pending the outcome in a case then before the Fifth Circuit Court of Appeals, *Franks Inv. Co. v. Union Pac. R.R.*, 593 F.3d 404 (5th Cir. 2010).

On June 30, 2008, the Louisiana Legislature passed Act No. 530, enacting La. Rev. Stat. 48:394, which established procedures before the Louisiana Public Service Commission which a railroad must follow prior to closing private crossings. Act No. 530 became effective on August 15, 2008. *See* 2008 La. Sess. Law Serv. Act 530 (West); LA. CONST. ART. 3, § 19.

On January 20, 2010, the Court lifted the stay after the Fifth Circuit rendered a decision in *Franks*, holding that a state-law action, applying Louisiana property laws, was not preempted by federal law.

On March 2, 2010, Union Pacific's Motion for Summary Judgment was reopened, and the parties filed additional briefs.

In the meantime, on June 30, 2010, the Louisiana Legislature amended La. Rev. Stat. 48:394. 2010 La. Sess. Law Serv. Act 858.

After briefing was complete on Union Pacific's Motion for Summary Judgment, on August 23, 2010, the Court issued a Ruling [Doc. No. 91] and Judgment [Doc. No. 92], granting in part and denying in part the Motion for Summary Judgment [Doc. No. 17]. The Court granted Union Pacific's Motion for Summary Judgment and dismissed the lessee Plaintiffs' claims with regard to the private crossings closed prior to June 30, 2008. The Court denied Union Pacific's Motion for Summary Judgment on Plaintiffs' remaining claims. Additionally, in the August 23, 2010 Ruling, the Court gave notice of its intent to issue certain *sua sponte* rulings.

On September 21, 2010, Union Pacific filed a Motion for Reconsideration of the Court's Ruling and Judgment [Doc. No. 99]. On September 23, 2010, Union Pacific also filed an opposition memorandum [Doc. No. 102] to the Court's stated intent to grant relief *sua sponte.*

On September 24, 2010, Union Pacific also filed a Motion for Partial Summary Judgment [Doc. No. 103], which incorporated its opposition memorandum [Doc. No. 102]. On October 8, 2010, Plaintiffs filed an opposition memorandum [Doc. No. 106] to Union Pacific's Motion for Partial Summary Judgment. On October 22, 2010, Union Pacific filed a reply [Doc. No. 111].

On December 8, 2010, the Court granted the State's Motion to Intervene. The State then filed a Memorandum in Opposition to Union Pacific's Motion for Summary Judgment [Doc. No. 118].

On March 1, 2011, the Court issued a Ruling and Judgment [Doc. Nos. 119 & 120] denying Union Pacific's Motion for Partial Summary Judgment for any claims or defenses based upon La. Rev. Stat. 48:394 [Doc. No. 103]. The Court also denied Union Pacific's Motion for Reconsideration [Doc. No. 99], construed as a motion seeking relief from judgment, except to

correct the effective date of La. Rev. Stat. 48:394 to August 15, 2008.[3] The Court reserved for trial issues of fact and Louisiana property and contract law regarding any private crossings closed before August 15, 2008. Finally, the Court, *sua sponte*, entered judgment (1) granting a permanent injunction to prevent Union Pacific from closing any existing crossings without complying with La. Rev. Stat. 48:394, (2) dismissing with prejudice Union Pacific's request for declaratory relief regarding existing crossings and Union Pacific's request for injunctive relief barring Plaintiffs from interfering with the closure of private crossings, and (3) dismissing without prejudice Union Pacific's request for an injunction barring Plaintiffs from creating more private crossings.

On March 31, 2011, Union Pacific filed an interlocutory appeal to the United States Court of Appeals for the Fifth Circuit. [Doc. No. 123]. On April 19, 2011, the Court certified three questions:

(1) Is La. Rev. Stat. 48:394 ("the Act") constitutional under the United States and Louisiana Constitutions?

(2) Is the Act preempted by federal law?

(3) Does the Act apply to the private railroad crossings in this case?

[Doc. No. 127].

On December 5, 2011, the Fifth Circuit issued an Opinion [Doc. No. 133]. The Fifth Circuit declined to answer "the certified questions regarding the constitutionality of 48:394 and its applicability to the private railroad crossings in this case." [Doc. No. 133, p. 12]. The Fifth Circuit explained that "if Union Pacific does not have ownership rights over the property at

---

[3] Thus, all references in the Court's prior rulings regarding the effective date of June 30, 2008, were to be corrected to August 15, 2008.

issue, then there would be no need to reach the question of whether or not Section 48:394 results in an unconstitutional taking, as a prerequisite for such a claim is the existence of private property capable of being taken." *Id.* at p. 11. The Fifth Circuit vacated this Court's holding that La. Rev. Stat. 48:394 is constitutional and remanded **"for a determination of the respective property rights of the private landowners and Union Pacific to the private railroad crossings at issue."** *Id.* at p.12 (emphasis added). If the Court finds that the Union Pacific "has ownership rights over the railroad crossings, the record will be sufficiently developed at that time to permit a ruling regarding the constitutionality of [La. Rev. Stat.] 48:394." *Id.*

After remand, the parties identified and exchanged deeds and records.

On July 11, 2012, the Court granted the State of Louisiana's voluntary Motion to Dismiss Without Prejudice, "subject to the State's right to re-intervene should the parties re-raise a purely state-law constitutional challenge to La. Rev. Stat. § 48:394."

On December 17, 2012, Plaintiffs filed a Joint Motion for Partial Summary Judgment [Doc. No. 153]. The same day Union Pacific filed a Motion for Summary Judgment [Doc. No. 154].

On December 18, 2012, the State, although no longer a party to this action, filed a letter with the Court addressing Union Pacific's Motion for Summary Judgment. *See* [Doc. No. 156]. The State observed that, pursuant to the Fifth Circuit's ruling, the issue of constitutionality of La. Rev. Stat. § 48:394 is premature. Further, to the extent that the Court considers this issue, the State contends that it should be permitted to file a memorandum defending the constitutionality of the statute. The State points out that the Fifth Circuit characterized Union Pacific's attack on the statute as an "as applied constitutional challenge," but Union Pacific is now raising a facial challenge. For this reason, the State contends that it is even more important for it to be heard

7

before the Court addresses the constitutionality of the statute. If the Court decides that it will address the constitutionality of the statute, then the State requested a telephone status conference to address the procedures. Finally, the State asks that the Court certify any ultimate issues of constitutionality to the Louisiana Supreme Court.[4]

On January 8, 2013, Union Pacific filed a Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 160].[5]

The motions are now ready for ruling.

### III. LAW AND ANALYSIS

#### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.* "[O]nly disputes over facts that might affect the outcome of the

---

[4] A federal district court does not have the authority to certify a question to the state supreme court. *See* to La. Rev. Stat. 13:72.1 and Rule XII of the Supreme Court of Louisiana.

[5] Plaintiffs did not file a memorandum in opposition to Union Pacific's motion, but, as the pending dispositive motions are cross motions, no additional briefing was necessary.

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

If the moving party meets the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Property Rights

In their Motion for Summary Judgment, Plaintiffs admit that "the railroad has an interest which is in the nature of a real right under Louisiana law . . . , and they are in further agreement that the Railroad does have a sufficient interest to permit it to properly assert the question of the validity of the statute in question." [Doc. No. 153, ¶ 4]. However, Plaintiffs argue that none of the applicable deeds "describe the property . . . with specificity sufficient to transfer fee title"; rather, the instruments can be "reasonably interpreted" to reflect the intentions of the parties to convey only a servitude. [Doc. No. 153-2, p. 4].

It is undisputed that the deeds pertaining to Crossings #4, #5, #11, and #12 convey only a servitude. With regard to the deeds pertaining to the remaining six crossings, Plaintiffs point to the specific deeds. Exhibit C-5, affecting Crossings #7, 8, 9, and 10, is titled, "Deed to Right of Way." Plaintiffs point out that the deed repeatedly refers to the grantors as the "owners of the land" and obligates Union Pacific to put in and maintain crossings. Plaintiffs further argue that the stated consideration of $300 was not reasonable for a transfer of fee title. Finally, Plaintiffs

9

contend that the property description is too vague to suffice to objectively, accurately or precisely locate the land affected, so as to translate fee title.

Plaintiffs also refer to documents affecting the McHenry property. Plaintiffs admit that the deeds Contain a "granting clause," but contend that the grant of the right of way was for the specific purpose of constructing a railroad, and there is no indication that the parties intended the grant of the right of way to convey title. Thus, Plaintiffs argue that they retained ownership of the land over which the crossings are located, and they are entitled to summary judgment.

In its Motion for Summary Judgment, Union Pacific argues that it has ownership rights to the railroad tracks, the railroad right of way, and the railroad crossings at issue, including, specifically, the right to exclude.[6] In support of its motion, Union Pacific argues that the Court need not reach a determination of whether the rights granted were in fee title or in servitude of passage because federal case law provides that, regardless whether the deed conveyed ownership rights or a servitude of passage, a railroad "owns" its right of way because it has the exclusive use of the land upon which its right of way is located. [Doc. No. 154-3 (citing, among others, *W. Union Tel. Co. v. Penn. R.R.*, 195 U.S. 540, 570 (1904) ("A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. . . . if a railroad's right of way was an easement it was one having the attributes of the fee, perpetuity and exclusive use and possession."); *see also Polk v. Ball*, 149 F.2d 263, 267 (5th Cir. 1945)

---

[6] Union Pacific also moves the Court to rule that the application of La. Rev. Stat. 48:394 in this matter is unconstitutional. The Court previously determined that La. Rev. Stat. 48:394 **is** constitutional. While the Court's ruling was vacated and the case remanded, the Fifth Circuit was clear that the Court should limit its review to the property and ownership rights of the private crossings. To the extent that the Court must do so, it stands by its prior rulings that the statute is constitutional.

(applying Louisiana law and finding that "the grant of a right-of-way for railroad purposes ordinarily vests in the railroad company virtually exclusive possession of the property over a long term of years, depriving the grantor, for all practical purposes, of all dominion over the property; hence, the property right remaining in the vendor has little or no value"; nevertheless, the Polk Court concluded that only a servitude, not fee title, had been conveyed). If the Court must reach a determination, Union Pacific argues that "signals" in the wordings of the deeds on the disputed crossings indicate that ownership was conveyed.

   The Court must apply Louisiana property law to determine the respective interests of the parties. A deed is a contract, and courts are bound to give legal effect to all written contracts according to the true intent of the parties. This intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. LA. CIV. CODE ARTS. 2045 and 2046. In determining the parties' intent, the Court must review the language of the deed or instrument as a whole. *John T. Moore Planting Co. v. Morgan's La. & T.R. & S.S. Co.*, 126 La. 840, 53 So. 22, 32 (1910) (("A 'right of way' may consist either of the fee, or . . . of a servitude"; the proper interpretation "must be gathered from the instrument as a whole."); *Ark. Imp. Co. v. Kan. City S. Ry. Co.*, 189 La. 921, 181 So. 445 (La. 1938).

> It is well-settled in this State that in deciding whether a fee simple title to land has been conveyed or a servitude or right-of-way thereupon has been granted by a deed, the intention of the parties thereto must be determined from the stipulations in the entire instrument, with a view of giving effect to all of the provisions therein contained and thereby avoid neutralizing or ignoring any of them or treating any of them as surplusage.

. . .

> . . . generally in right-of-way cases-whether the same be for rail or canal purpose-the Courts have construed the intent of the parties to be to grant a servitude only and have held that the fee title remained in the owner of the land

> over which the right-of-way was granted. This is in line with the modern practice of companies constructing cross-country pipelines, etc. to acquire only right-of-way rights through the lands over which the lines run. In cases in which the instrument granted a parcel of ground for a particular purpose such as a city market, sugar refinery, or house of worship, the Court has usually found that it was the intent of the parties to grant a fee title subject to the resolutory condition. This is consistent with the usual practice of religious and community service organizations to acquire a regular fee title to the land on which its buildings may rest.

*Sun Oil Co. v. Stout*, 46 So.2d 151, 153 (La. App. 2d Cir. 1950).[7]

When the issue of ownership is presented in an action for a declaratory judgment, "the court shall render judgment in favor of the party . . . [w]ho would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves . . . ownership." LA. CODE CIV. PROC. art. 3654(1).

To determine whether Plaintiffs' predecessors, through the applicable deeds, conveyed servitudes of passage or fee title with the rights of way to Union Pacific's predecessors, the Court must look to the deeds themselves.

### 1. Crossings #4, #5, #11, and #12

As conceded by Union Pacific, the deeds pertaining to these crossings conveyed a servitude of passage, not ownership rights. Thus, the ownership of the property remains vested in the Plaintiff-owners. Plaintiffs' Motion for Summary Judgment on these crossings is GRANTED.

---

[7]While Union Pacific concedes the law on this point, it also cites the Court to two cases purportedly standing for the proposition that rights of way of a specific width (e.g., 50, 100, or 150 feet) are conveyances of fee title, not servitudes. Union Pacific suggests in its memorandum that this fact alone might be sufficient to show transfer of ownership. As indicated later in Union Pacific's memorandum, this is just one factor in a multi-factor test used only by the Louisiana Third Circuit Court of Appeals in determining whether a right of way is to be interpreted as a transfer of servitude or fee title. These factors, however, require the Court to consider extrinsic evidence which is not properly considered unless the deed is ambiguous.

## 2. Crossings #2 and #3

Exhibit C-1, the March 1, 1910 deed[8] affecting Crossings #2 and #3, provides, in pertinent part:

> . . . with the view of correcting any uncertainty as to the contents of the said right-of-way deeds and in order to fix and establish the same at one hundred (100) feet in width for its entire extent across said plantation, and for the consideration hereinafter expressed he has sold, conveyed and delivered and by these presents does bargain, sell, transform[,] assign, set over and deliver unto . . . [predecessor railroad company] . . . the following described property . . . :
>
> A strip of land extending fifty (50) feet on each side of the center line of the main track of the . . . [railroad] . . .
>
> TO HAVE AND TO HOLD the above described property, unto the said purchaser, its successors and assigns, with full and general warranty of title and with full subrogation to all rights of warranty and all other rights held by the said vendor.
>
> . . .
> Both parties thereto, declared that it is their intention that the said right of way shall be one hundred (100) feet throughout the entire property of the said M.A. McHenry, and that in order so to be, they further stipulate, the surplus is transferred by the said [railroad] . . . to M.A. McHenry and where the present right of way is deficient of one hundred (100) feet, the said M.A. McHenry transfers the deficiency to the [railroad] . . . in order to make the right of way, during the whole lengthy across his plantation a uniform width of one hundred (100) feet.

While there clearly is some conveyance-type language in the deed, "'it is not uncommon for the owners of land in granting servitudes thereon to use the language and form generally used in a sale of realty, coupled with qualifying clauses designating the servitude.'" *Polk v. Ball*, 149 F.2d 263, 266 (5th Cir. 1945) (*quoting Noel Estate, Inc. v. Kan. City S. & Gulf Ry. Co.*, 187 La. 717, 175 So. 468, 470 (1937)). Therefore, "[t]he fact that the right-of-way deed recited that the

---

[8]The deed does not have an identifying title.

vendor did 'hereby sell, transfer, convey, and deliver with full warranty of title the following described property' . . . is not unusual but is a form universally used in Louisiana in the conveyance of property rights." *Id.* The deed also states that it was entered into to correct the uncertainty of a right of way. Further, the conveyance statements are qualified by other language in the deed imposing an obligation on the railroad to construct a "hog proof fence." [Doc. No. 154-4, Exh. C-1]. The Fifth Circuit has stated that this type of obligation indicates "that having granted a servitude on his property, the owner sought to make it less burdensome." *Id.* For these reasons, Plaintiffs' Motion for Summary Judgment on Crossings #2 and #3 is also GRANTED.

        3.     **Crossings #7, #8, #9, and #10**

Exhibit C-5, the March 12, 1889 "DEED TO RIGHT OF WAY," affecting Crossings #7, #8, #9, and #10 provides:

> [The grantors] . . . who . . . for the price hereinafter expressed they have bargained and sold and by these presents do bargain, sell, transfer, assign and set over unto [the railroad] . . . "[a] strip of land fifty feet wide extending through our plantation on the east bank of the Ouachita River . . . . said strip of land extending twenty five feet on each side of the center of the track or road bed of the [railroad] . . . as now located and in process of construction across said plantation. . . The price, terms and conditions upon which the above sale is made are as follows to wit: The sum of three hundred dollars in cash in hand paid receipt whereof is hereby acknowledged . . . Cattle guards of the most approved and effective character shall be put in and constantly maintained as well as crossings on the road through said plantation . . . Whenever required by the owner of the land, the company will erect and maintain good and substantial fences on each side of the line of the road for the protection of stock. . . . .

[Doc. No. 154-4, Exh. C-5].

This deed, much like the one before it, has some language indicating a conveyance of fee title, but when read more closely the deed indicates that the "owner of the land" remains just that, and he transferred only a servitude to Union Pacific's predecessor. That predecessor was

obligated to continue to maintain cattle guard and substantial fences for the protection of stock. Thus, Plaintiffs' Motion for Summary Judgment on Crossings #7, #8, #9, and #10 is GRANTED.

### 4. Crossing #10

Finally, Exhibit C-6, affecting Crossing #10, the March 26, 1888 Deed to Right of Way provides:

> For and in consideration of the sum of one dollar, and in consideration of the further fact that the [railroad] propose[s] to build its contemplated road over and across [certain land identified as Belmont Plantation] . . . Now, if the said line of road shall pass over the above lands, then and in that event, I hereby sell and grant the said Company the right of way, of one hundred feet in width, over the same, if cleared, and one hundred and fifty feet if in the woods, for the consideration expressed above. . . . .

[Doc. No. 154-4, Exh. C-6].

This deed, when considered by the Court, clearly indicates that the owner of the property granted a servitude to allow the construction of a road "over and across" the identified land. The Court finds that no ownership rights were conveyed, and Plaintiffs' Motion for Summary Judgment on Crossing #10 is also GRANTED.

### 5. Other Considerations

The Court has considered the possession of the crossings by Union Pacific and how that possession affects the analysis. Unlike in *Franks Investment*, Plaintiffs did not proceed with a possessory action. There is no doubt that Union Pacific has been and is in possession of the private crossings. *See Franks Investment*, Civil Action No. 08-0097 [Doc. No. 62, p. 5 (In this case with similar facts, the plaintiff brought a possessory action; Judge Stagg did not have to reach the "nature or ownership of the real right" because the plaintiff had brought a possessory

action and, thus, "only the **possession** of the real right" was relevant."). However, the parties brought claims for declaratory relief and, pursuant to the directive of the Fifth Circuit, the Court was charged with determining ownership. In meeting its obligation, the Court has relied on the language contained in the four corners of the deeds. To the extent, however, that some case law suggests that extrinsic evidence may considered, the Court would also find in favor of Plaintiffs, who have been assessed and who have paid the *ad valoreum* taxes on these properties through the years.

IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Joint Motion for Partial Summary Judgment [Doc. No. 153] is GRANTED, and Union Pacific's Motion for Summary Judgment [Doc. No. 154] is DENIED.

MONROE, LOUISIANA, this 22nd day of March, 2013.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE